BLANK ROME LLP
Attorneys for Defendant COECLERICI
TRANSPORT PANAMAX LTD.
The Chrysler Building
405 Lexington Ave
New York, New York 10174-0208
(212) 885-5148
Jeremy J.O. Harwood (JH-9012)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BETHLEHEM STEEL CORPORATION, *et al.*,<br>            Debtors, | Chapter 11 Case No.<br>01-15288 (BRL) 01-15302,<br>01-15308 through 01-15315 (BRL)<br>(Jointly Administered) |
| BETHLEHEM STEEL CORPORATION, *et al.*,<br>            Plaintiff-Appellees,<br><br>        v.<br><br>COECLERICI TRANSPORT PANAMAX LTD.,<br>            Defendant-Appellant. | Adversary Proceeding<br>No. 03-92538 (MG)<br><br>**NOTICE OF APPEAL** |

COECLERICI TRANSPORT CAPE SIZE LTD., f.k.a. COECLERICI
TRANSPORT PANAMAX LTD. ("Coeclerici") appeals to the District Court from an
order dated July 15, 2008 of the Bankruptcy Court.

A true and correct copy of the Order is attached hereto as Exhibit A.

The plaintiff's attorneys to whom notice should be sent is as follows:

Ian J. Gazes, Esq.
Gazes LLC
32 Avenue of the Americas
27th Floor
New York NY 10013
Phone: (212) 765-9000
Fax: (212) 765-9675
E-mail: ian@gazesllc.com

Dated: New York, New York
July 21, 2008

Respectfully submitted,

BLANK ROME LLP
Attorneys for Defendant

By: _____

Jeremy J.O. Harwood (JH-9012)
A Member of the Firm
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

TO:    Clerk, United States District Court
Southern District of New York

2

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| BETHLEHEM STEEL CORP., et al. | : Case No. 01-15288 through |
| | : 01-15302 (BRL), 01-15308 |
| Debtor. | : through 01-15315 (BRL) |
| | : Jointly Administered |

-----------------------------------------------------------x

| | |
|---|---|
| BETHLEHEM STEEL CORP., | : |
| | : |
| Plaintiff, | : |
| | : |
| -v- | : Adv. Pro. No. 03-92538 (MG) |
| | : |
| COECLERICI TRANSPORT PANAMAX, | : |
| LTD. | : |
| | : |
| Defendant. | : |
| | : |

-----------------------------------------------------------x

## ORDER DENYING MOTION TO COMPEL ARBITRATION

On May 15, 2008, Defendant filed a motion to compel arbitration of this adversary proceeding. ECF Doc. # 32. This motion was opposed by the Bethlehem Steel Corporation Liquidating Trust on June 13, 2008. ECF Doc. # 34.

For the reasons discussed in the opinion denying four separate motions to compel arbitration in *Bethlehem Steel Corp. v. Moran Towing Corp.*, Adv. No. 03-92333, ECF Doc. # 34, the motion to compel arbitration is hereby DENIED.

Dated: New York, New York
    **July 15, 2008**

       **/s/ Martin Glenn**
       The Honorable Martin Glenn
       United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                                    :
                                                         :
BETHLEHEM STEEL CORP., et al.                            :        Chapter 11
                                                         :        Case Nos. 01-15288 through
                                                         :        01-15302, 01-15308 through
                                                         :        01-15315 (BRL)
                                        Debtors.         :
                                                         :
------------------------------------------------------------x
                                                         :
BETHLEHEM STEEL CORP.                                    :
                                                         :        Adv. Pro. 03-92333 (MG)
                                        Plaintiff,       :
                                                         :
          - against -                                    :
                                                         :
MORAN TOWING CORP.,                                      :
                                                         :
                                        Defendant        :
------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER DENYING FOUR SEPARATE MOTIONS TO COMPEL ARBITRATION

**A P P E A R A N C E S:**

BLANK ROME, LLP
405 Lexington Avenue
New York, NY 10174
By:  Jeremy O. Harwood

*Counsel for Defendants Moran Towing Corp., Coeclerici Transport Panamax, Ltd., and Satchuk Resources, Inc. D/B/A Foss Maritime Co.*

GAZES, LLC
32 Ave. of the Americas, 27th Floor
New York, NY  10013
By:  Eric Wainer

*Counsel to Bethlehem Steel Corp. Liquidating Trust, as successor in interest to Plaintiff Bethlehem Steel Corp.*

**MARTIN GLENN**
**United States Bankruptcy Judge**

Before the court are four motions to compel arbitration in four separate adversary
proceedings being prosecuted by Bethlehem Steel Corporation Liquidating Trust
("Plaintiff" or "Liquidating Trust"), as the successor in interest to Bethlehem Steel
Corporation, against Defendants Moran Towing Corp. ("Moran") (Adv. No. 03-92333),
Coeclerici Transport Panamax Ltd. ("Coeclerici") (Adv. Nos. 03-92536, 03-92538), and
Satchuk Resources Inc. D/B/A Foss Maritime Co. ("Satchuk") (Adv. No. 03-09315)
(collectively "Defendants"). Each of the actions assert statutory avoidable preference
claims pursuant to 11 U.S.C. §§ 547 and 550. The Defendants in each of these cases are
represented by the same counsel and have filed nearly identical motions to compel
arbitration. As all four of the arbitration agreements in question use the same language,
all four motions to compel arbitration will be resolved in this opinion.[1] The Defendants
contend that the avoidance actions are subject to mandatory arbitration. The Plaintiff
contends that the avoidance actions are not subject to arbitration.

For the reasons set forth below, all four motions to compel arbitration are denied.
Avoidance actions brought pursuant to the Bankruptcy Code never belonged to the
Debtor, but rather were creditor claims that could only be brought by a trustee or debtor
in possession, or, as in this case, by the Liquidating Trust by assignment under a
confirmed plan. While the prepetition Debtor was a party to the arbitration agreements,
the creditors (or their representatives) were not parties to any arbitration agreement.
Thus, the avoidance actions are not subject to the arbitration agreements.

---

[1]     This opinion is being entered in the Moran case. The other three actions are being disposed of by
the entry of separate orders incorporating this opinion by reference.

2

## BACKGROUND

On October 15, 2001, Bethlehem Steel Corporation and its debtor subsidiaries ("Debtor") commenced voluntary cases under chapter 11 in this court. The Debtor's plan of liquidation, approved by the Court on October 22, 2003, formed the Bethlehem Steel Corporation Liquidating Trust, and provided that all avoidance actions, defined as "any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code," would be transferred from the Debtor to the Liquidating Trust on the effective date of the plan free and clear of all liens and encumbrances. Case No. 01-15288, ECF Doc. #'s 1553, 1554. The Debtor commenced all of these adversary proceedings before the confirmation of the liquidation plan. Accordingly, Plaintiff has prosecuted these adversary proceedings pursuant to 11 U.S.C. § 547 seeking to avoid preferential transfers, and 11 U.S.C. § 550 directing Defendants to pay the Liquidating Trust for the benefit of Debtor's creditors. In each adversary proceeding the Plaintiff asserted that all necessary requirements were met for avoiding a transfer under 11 U.S.C. § 547(b): the challenged transfers were "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made − (A) on or within 90 days before the date of the filing of the petition; . . . and (5) that enable[d] such creditor to receive more than such creditor would receive if − (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

3

The case against Satchuk was filed on September 25, 2003. Adv. No. 03-09315, ECF Doc. # 1. The case against Moran and the two cases against Coeclerici were filed on October 14, 2003. Adv. No. 03-92333, ECF Doc. # 1; Adv. No. 03-92536, ECF Doc. # 1; Adv. No. 03-92538, ECF Doc. # 1. In each answer, the Defendants denied that the transfers could be avoided under section 547 and asserted numerous affirmative defenses, including that the transfers were contemporaneous exchanges to the creditors for new value; that the Debtor was not insolvent at the time of the transfers; that the transfers were made in the ordinary course of business on ordinary business terms; and that these disputes are subject to binding arbitration.

These four Bethlehem Steel adversary proceedings – along with over 1300 similar Bethlehem Steel avoidance actions – were transferred to me in August 2007. Adv. No. 03-92333, ECF Doc. # 19; Adv. No. 03-09315, ECF Doc. # 19; Adv. No. 03-92536, ECF No. Doc. # 24; Adv. No. 03-92538, ECF Doc. # 24. Case Management and Scheduling Orders were entered in the Moran and Satchuk cases on October 1, 2007. Adv. No. 03-92333, ECF Doc. # 21; Adv. No. 03-09315, ECF Doc. # 21. The First Amended Case Management Scheduling Orders entered on January 4, 2008 in both cases provided that all fact and expert discovery shall be completed no later than May 5, 2008. Adv. No. 03-92333, ECF Doc. # 25; Adv. No. 03-09315, ECF Doc. # 25. The Case Management and Scheduling Orders for the two Coeclerici adversary proceedings were entered on February 20, 2008 and provided that all fact and expert discovery shall be completed no later than May 6, 2008. Adv. No. 03-92536, ECF Doc. # 29; Adv. No. 03-92538, ECF Doc. # 30. The Defendant's motions to compel arbitration were filed on May 21, 2008.[2]

---

[2]     Thus, the Defendants waited more than four years after these cases were filed to file their motions to compel arbitration, only after the close of the period for all fact and expert discovery. The Plaintiff has

4

Adv. No. 03-92333, ECF Doc. # 27; Adv. No. 03-09315, ECF Doc. # 27; Adv. No. 03-92536, ECF Doc. # 31; Adv. No. 03-92538, ECF Doc. # 32.

As Coeclerici is an Italian company, the two motions concerning it were brought pursuant to the New York Convention, a treaty of the United States stating that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. The motions concerning Moran and Satchuk, both domestic companies, were brought under the Federal Arbitration Act, 9 U.S.C. § 2.

A further discussion of the facts pertaining to each of the four separate adversary proceedings is set forth below.

*Moran Towing Co., Adv. No. 03-92333:*

Moran and the Debtor entered into an agreement on August 24, 2000 ("Moran COA"), wherein Moran agreed to transport coal by barge and tug for the Debtor. Adv. No. 03-92333, ECF Doc. # 7, at 1. Moran obtained a lien on the cargo carried for freight and demurrage pursuant to clause 25 of the Moran COA. *Id.* The Plaintiff seeks to recover payments made to Moran between July 17, 2001 and September 21, 2001, totaling $340,163.51. Adv. No. 03-92333, ECF Doc. # 1, Exh. A.

The arbitration clause of the Moran COA provides that "[a]ny and all differences and disputes . . . of whatsoever nature arising out of this Agreement shall be put to arbitration in the City of New York, pursuant to the laws relating to arbitration there in force." Adv. No. 03-92333, ECF Doc. # 7, Exh. A, ¶ 31.

---

not argued that Defendants waived their rights to compel arbitration, or are otherwise estopped by laches from seeking to compel arbitration. Therefore, the Court does not address such issues here.

*D/B/A Foss Maritime, Adv. No. 03-09315:*

Satchuk entered into a contract of Charter Party with the Debtor on February 8, 2001 (the "Charter"). Adv. No. 03-09315, ECF Doc. # 27, Exh. A. The Charter called for a voyage from Australia to the United States, for which the Debtor paid 90% of freight for the cargo loaded on June 18, 2001 and the balance and accrued demurrage[3] on August 24, 2001. Adv. No. 03-09315, ECF Doc. # 27, Aff., ¶¶ 3, 4. The Plaintiff seeks to recover these payments in the amount of $102,714.15. Adv. No. 03-09315, ECF Doc. # 1, Exh. A.

Clause 30 of the Charter provides that "[a]ny and all differences of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force . . . ." Adv. No. 03-09315, ECF Doc. # 27, Exh. A.


*Coeclerici Transport Panamax Ltd., Adv. No. 03-92536:*

Coeclerici and the Debtor entered into a contract of affreightment on February 11, 2000 ("Coeclerici COA"). ECF Doc. # 31, Exh. A. The Coeclerici COA provided that Coeclerici would provide vessels for the carriage of seven cargoes, in addition to an optional cargo. Adv. No. 03-92536, ECF Doc. # 31, at 1. The Coeclerici COA provided Coeclerici with a lien on cargo for freight and demurrage. ECF Doc. # 31, Exh. A, ¶ 18. The payments at issue in the complaint, relating to four vessels under the Coeclerici COA, total $1,477,501.22. Adv. No. 03-92536, ECF Doc. # 1, Exh. A.

---

[3]  Demurrage is defined as "[l]iquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time." BLACK'S LAW DICTIONARY (8th ed. 2004).

The Coeclerici COA's arbitration clause provides that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force." Adv. No. 03-92536, ECF Doc. # 31, Exh. A, ¶ 30.

*Coeclerici Transport Panamax Ltd., Adv. No. 03-92538:*

The second Coeclerici adversary proceeding is governed by the same contract of affreightment as the first, the Coeclerici COA.[4] Coeclerici and the Debtor entered into the Coeclerici COA on February 11, 2000. Adv. No. 03-92538, ECF Doc. # 32, Exh. A. The Debtor renewed the Coeclerici COA in 2000, pursuant to clause 17, with a different entity, Coeclerici Transport Cape Size Ltd. Adv. No. 03-92538, ECF Doc. #32, Exh. B. The Coeclerici COA provided Coeclerici with a lien on cargo for freight and demurrage. Adv. No. 03-92538, ECF Doc. # 32, Exh. A, ¶ 18. The payments at issue relate to two vessels under the Coeclerici COA and total $1,540,908.24. Adv. No. 03-92538, ECF Doc. # 1, Exh. A.

## DISCUSSION

When determining whether to compel arbitration and stay proceedings pending arbitration a court must undertake a multi-step process:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the

---

[4]     As Adv. No. 03-92538 is governed by the same agreement as Adv. No. 03-92536, the arbitration clause at issue in both proceedings is the same, providing that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force." Adv. No. 03-92538, ECF Doc. # 31, Exh. A, ¶ 30.

claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).

It is undisputed that the Debtor entered into separate arbitration agreements with the three Defendants. Therefore, the next step requires the Court to determine the scope of each of these agreements.

## A.    The Broad vs. Narrow Distinction

Analyzing the scope of the arbitration agreements requires that a court first determine whether the clause is broad or narrow. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ("First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow."); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("[A] court should decide at the outset whether the arbitration agreement [is] broad or narrow.") (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983)) (internal quotations omitted).

In *Collins*, the Second Circuit explained the relevance of the distinction between broad and narrow clauses:

> In construing arbitration clauses, courts have at times distinguished between 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes. If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction *of the contract and of the parties' rights and obligations under it* are within the jurisdiction of the arbitrator.

*Collins*, 58 F.3d at 21 (citing *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)) (emphasis in original). With clauses determined to be

8

narrow form clauses, "a court considering the appropriate range of arbitrable issues must consider whether the question at issue is on its face within the purview of the clause." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988).

In *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167 (2d Cir. 2004), the Second Circuit held that a clause submitting for arbitration "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" was a broad form clause. The clauses at issue in these adversary proceedings require arbitration of "[a]ny and all differences and disputes, of whatsoever nature arising out of this charter." [5] Adv. No. 03-92536, ECF Doc. # 31, Exh. A, ¶ 30; Adv. No. 03-92538, ECF Doc. # 31, Exh. A, ¶ 30; Adv. No. 03-09315, ECF Doc. # 27, Exh. A. As this is the exact language of the clause in *JLM* that the Second Circuit held to be broad, the clauses in these four adversary proceedings should also be treated as broad form clauses. Therefore, under the *Collins* decision there is "a presumption of arbitrability." *Collins*, 58 F.3d at 23. However, even with a broad form clause, if the claims present "no questions in respect of the parties' rights and obligations under [the agreements]," they are outside the purview of the arbitration clause and are not arbitrable. *Id*

## B.   Are the Preferential Transfer Claims Within the Scope of the Arbitration Agreement?

In this Circuit, courts have exempted fraudulent transfer claims from arbitration because they are statutory claims belonging to the trustee and are not claims derivative of

---

[5]      The Moran Towing clause uses the phrase "arising out of this Agreement," whereas all other clauses use the term "charter." Adv. No. 03-92333, ECF # 7, Exh. A, ¶ 31. This is the only discernible difference between the texts of the four clauses.

the debtor's own rights. *Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977);

*Hagerstown Fiber Ltd. P'ship v. Carl C. Landegger,* 277 B.R. 181 (Bankr. S.D.N.Y.

2002) (granting motion to compel arbitration of fraud claims, but not fraudulent transfer

claims brought pursuant to section 544(b) of the Bankruptcy Code). In *Allegaert*, the

district court granted the defendants' motion to stay the trustee's action against 20

defendants and required that the claims be arbitrated. The trustee's complaint included

fraudulent transfer claims brought under the Bankruptcy Act and various claims for

alleged securities violations. The Court of Appeals reversed and remanded, specifically

concluding that the fraudulent transfer claims were not subject to arbitration. *Allegaert,*

548 F.2d at 435-36. The fraudulent transfer claims were exempted from arbitration

because they are "statutory causes of action belonging to the trustee, not to the bankrupt,

and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the

trustee enforces." *Id.* at 436. *Allegaert* speaks directly to fraudulent transfer claims that

may be brought by a trustee, concluding that such claims are not subject to mandatory

arbitration pursuant to a debtor's prepetition arbitration agreement. *Id. See also* 11

U.S.C. § 547(b) ("The trustee may avoid any transfer of an interest of the debtor in

property . . . ."). But under section 1107 of the Code, a debtor in possession functions in

the same way as a trustee for purposes of bringing avoidance actions: "a debtor in

possession shall have all the rights, and powers, and shall perform all the functions and

duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). A

liquidating trust that obtains the rights to pursue avoidance actions is likewise not bound

by an arbitration clause entered into by the prepetition debtor. *See OHC Liquidation

Trust v. American Bankers Insurance Co. (In re Oakwood Homes Corp.)*, 2005 WL

670310, at *4 (Bankr. D. Del. 2005) (holding that a liquidating trust established by a chapter 11 debtor to bring actions to avoid fraudulent and preferential transfers was not bound by an agreement between defendants and the debtor to arbitrate disputes, as the trustee of the liquidating trust was bringing the avoidance actions on behalf of creditors).

Defendants argue that *Allegaert* is not controlling because it was decided under the Bankruptcy Act, before the adoption of the Bankruptcy Code in 1978. However the Defendants have not pointed to any changes between the Act and the Code that would lead to a different result. While the present Bankruptcy Code includes substantial amendments to sections 547 and 550 from their pre-1978 Bankruptcy Act counterparts, none of those changes alters in any way the underlying rationale of *Allegaert* that exempts statutory avoidance claims from arbitration.

Defendants also argue that since *Allegaert's* holding that securities claims are not arbitrable has subsequently been rejected by the Supreme Court, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (holding that claims brought under section 10(b) of the Securities Exchange Act and RICO claims were arbitrable), *Allegaert's* holding that fraudulent conveyance claims are not arbitrable has also been undermined. The Supreme Court and the Second Circuit have clearly expanded the range of claims that are subject to arbitration since *Allegaert* was decided. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (holding that a predispute agreement to arbitrate Securities Act of 1933 claims was enforceable); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (holding that antitrust claims arising out of an international commercial transaction were arbitrable despite the fact that they were not specifically mentioned in the arbitration clause);

11

*MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006) (holding that a post-discharge claim for violation of the automatic stay was arbitrable because it "would not necessarily jeopardize or inherently conflict with the Bankruptcy Code"). However, none of those decisions undermines the basis for *Allegaert's* holding that statutory avoidance claims are not subject to arbitration. Avoidance claims are not derivative of the debtor's rights; rather, they are statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession, or as in this case, by the Liquidating Trust as assignee under Debtor's confirmed chapter 11 plan. Claims that are derivative of a debtor's rights may be subject to arbitration. Claims that belong exclusively to a trustee or debtor in possession belong to creditors who were not parties to the arbitration agreement and, therefore, are not subject to arbitration. Decisions post-dating *Allegaert* make this distinction very clear. Defendants have failed to find any reported decisions supporting their argument that statutory avoidance claims are subject to arbitration.

In a decision rendered well after enactment of the Bankruptcy Code, the Third Circuit followed *Allegaert's* reasoning in *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir. 1989), refusing to compel arbitration of fraudulent transfer claims while compelling arbitration of various state and federal securities claims. The *Hays* court acknowledged that "*Allegaert* was decided before the enactment of the Bankruptcy Reform Act of 1978, the 1984 Amendments, and the above-cited recent Court decisions reaffirming the strong federal policy favoring arbitration." *Hays* 885 F.2d at 1154 n.8 (citing *Rodriguez de Quijas*, 490 U.S. 477; *McMahon*, 482 U.S. 220; *Mitsubishi Motors*, 473 U.S. 614). Based on the changes in the law since *Allegaert*, the court rejected the argument that the trustee was not generally bound by the arbitration

12

clause in that case, but the court distinguished the fraudulent transfer claims, holding that

such claims are not arbitrable:

> Claims asserted by the trustee under section 544(b) are not derivative of the
> bankrupt. They are creditor claims that the Code authorizes the trustee to assert
> on their behalf. The Supreme Court has made it clear that it is the *parties* to an
> arbitration agreement who are bound by it and whose intentions must be carried
> out. Thus there is no justification for binding creditors to an arbitration clause
> with respect to claims that are not derivative from one who was a party to it.

*Hays,* 885 F.2d at 1155 (citing *Mitsubishi Motors,* 473 U.S. at 625) (emphasis in

original).

Relying on *Allegaert* and *Hays,* Chief Judge Bernstein reached this same

conclusion in *Hagerstown,* 277 B.R. 181, a case also controlled by the Bankruptcy Code:

> A trustee in bankruptcy wears two hats. First, he stands in the shoes of the debtor,
> and may bring any suit that the debtor could have brought before bankruptcy.
> When the trustee sues as successor to the debtor, his rights are limited to the same
> extent as the debtor's under applicable non-bankruptcy law. If the debtor agreed
> in a pre-petition contract to arbitrate a dispute, the trustee, suing as successor to
> the debtor, is likewise bound by the arbitration clause.
>
> . . . .
>
> Section 544(b), however, puts the trustee in the creditors' shoes, and allows him
> to assert claims that only they could assert outside bankruptcy. The claims
> inherited from the creditors are not arbitrable for the reasons explained in
> *Allegaert* . . . .

*Id.* at 206-07 (citations omitted).

*Allegaert*, *Hays* and *Hagerstown* all involved fraudulent transfer claims.

Specifically addressing the arbitrability of preferential transfer claims brought under

section 547 of the Bankruptcy Code, the court in *OHC Liquidation*, 2005 WL 670310, at

*4, ruled that it was "entirely appropriate" to equate preferential transfers with fraudulent

transfers as core proceedings belonging to the trustee and not derivative of the debtor.

*See also Pardo v. Pacificare of Tex., Inc. (In re APF Co.),* 264 B.R. 344, 363 (Bankr. D.

13

Del. 2001) (holding that preferential transfer claims brought under section 547 are not arbitrable).

The *Hays* court's reasoning that "there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it" is in line with the aims of the Federal Arbitration Act as interpreted by the Supreme Court. *Hays*, 885 F.2d at 1155. *Mitsubishi Motors* held that "[t]he first task of a court asked to compel arbitration of a dispute is to determine whether *the parties* agreed to arbitrate that dispute." *Mitsubishi Motors*, 473 U.S. at 625 (emphasis added). The claims sought to be arbitrated here were neither extant, nor capable of being brought by the Debtor at the time the Coeclerici COA, the Moran COA, or the Charter were signed. These claims are not derivative of the Debtor but belong to the Plaintiff, as the assignee of the statutory avoidance claims that belonged to the debtor in possession.

Accordingly, the Court believes that the well-settled law in this Circuit (at least since the decision in *Allegaert*), subsequently followed by the Third Circuit in *Hays*, and by other lower courts, including by Chief Judge Bernstein in this court in *Hagerstown*, necessarily requires that the motions to compel arbitration of statutory avoidance claims be denied. As the court held in *OHC Liquidating Trust*, statutory preference avoidance claims are analogous to the fraudulent transfer claims that were addressed in *Allegaert*, *Hays*, and *Hagerstown*. The same rationale for denying arbitration applies to preference claims. They are not claims that are derivative of debtor's rights; they can only be brought by a trustee or debtor in possession or one of their assignees, none of whom were parties to the arbitration agreement; and, therefore, preference avoidance claims are not subject to arbitration.

14

### C.    Discretion to Deny Arbitration

As explained above, the Court has concluded that the statutory preference avoidance claims are not covered by the arbitration clauses involved in these adversary proceedings. But even if these claims were covered by the broad arbitration clauses in the underlying contracts, the Court nevertheless has discretion to deny arbitration of these core proceedings and would exercise that discretion to deny the motions to compel arbitration in these cases. The Federal Arbitration Act provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Correspondingly, "there will be occasions where a dispute involving both the Bankruptcy Code . . . and the Arbitration Act . . . presents a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Assoc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999) (quoting *Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.*, 80 B.R. 606, 610 (D. Mass. 1987)).

While the Court must stay proceedings if an arbitration clause is found to be applicable, the Supreme Court has acknowledged that "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended

to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 226-27.

In assessing whether the court has discretion to refuse to compel arbitration, core bankruptcy proceedings "implicate more pressing bankruptcy concerns" than do non-core proceedings. *In re U.S. Lines, Inc.*, 197 F.3d at 639. Preferential transfer proceedings are listed as core proceedings. *See* 28 U.S.C. § 157(b)(2)(F) ("Core proceedings include, but are not limited to – (F) proceedings to determine, avoid, or recover preferences."). Section 157(b)(2)(F) clearly and unambiguously defines preferential transfer proceedings as core proceedings. *MBNA*, 436 F.3d at 109 (proceedings that "by their nature, could arise only in the context of a bankruptcy case" are core proceedings) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96-97 (5th Cir. 1987)). As claims that only exist in the context of bankruptcy and belong exclusively to the debtor in possession or the trustee, preferential transfer claims brought under § 547 are clearly core proceedings.

Deciding that a proceeding is core is not alone a sufficient basis to deny arbitration in the face of a broad form clause that otherwise covers the dispute. "[E]ven a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration." *In re U.S. Lines, Inc.*, 197 F.3d at 639. In core proceedings, a further determination is needed to show that arbitrating the dispute would severely conflict with relevant provisions of the Bankruptcy Code. "If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring enforcement of arbitration agreements." *MBNA*, 436 F.3d at 108. Determining whether a sufficiently severe conflict exists between the Bankruptcy Code and the

16

Federal Arbitration Act to deny the request to arbitrate "requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *Id.*

The claim at issue in *MBNA* was a post-petition violation of the automatic stay by the debtor's bank, which the court distinguished from claims in previous decisions where "resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code." *MBNA,* 436 F.3d at 110. The debtor's case was a liquidating chapter 7 case so the estate included only property in which the debtor had an interest as of the commencement of the case. *Id.* Therefore, only the debtor – and not creditors – would benefit from any recovery on the claim. The court made it clear that matters integral to the bankruptcy proceedings are within the court's discretion to deny arbitration. In contrast, the preference claims at issue here belong to the Plaintiff as assignee of the debtor in possession pursuant to the confirmed plan and are brought for the benefit of the creditors.

In *U.S. Lines* and *MBNA*, the Second Circuit clearly articulated that in certain core bankruptcy proceedings that severely conflict with the Federal Arbitration Act, the court has discretion to deny arbitration. The preference claims here are core matters that are integral to a bankruptcy proceeding. Facts common to many or most of the many hundreds of remaining adversary proceedings being prosecuted by the Liquidating Trust are likely to control the outcomes of these four adversary proceedings. Uniformity in application of the law to the facts in these federal statutory claims is furthered by federal court litigation and not arbitration. As the court stated in *OHC Liquidating Trust*:

> The result is, that certain fact situations may be expected to bring about fairly consistent results, wherever they are tried. To subject these matters to arbitration, before individuals or tribunals with little or no experience in bankruptcy law or practice, and with little or no concern for the rights and interests of the body of

17

creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results.

*OHC Liquidating Trust*, 2005 WL 670310, at *5.

The Coeclerici defendants argue that the New York Convention – applicable to the two cases where Coeclerici is a party, but not to the Moran and Satchuk proceedings – requires arbitration of the Coeclerici cases. But the reasoning of *Allegaert* and *Hays* applies equally to all four cases. Only claims derivative of the Debtor's rights are subject to arbitration. No such claims are asserted here. Statutory avoidance claims that belong to the trustee or debtor in possession are not subject to the Debtor's arbitration agreements. Second, even if the arbitration clauses could cover these avoidance claims, the Court nevertheless concludes that it may decline to compel arbitration of these claims.

With respect to international agreements, the Court has less discretion to deny motions to arbitrate than it does with respect to domestic agreements. "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Mitsubishi Motors*, 473 U.S. at 629. However, the Second Circuit has found that "[i]n the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." *In re U.S. Lines, Inc.*, 197 F.3d at 39.

Federal policy favoring recognition of arbitration agreements is particularly strong for international agreements. In the circumstances presented here, however, the Court concludes that there is a "severe conflict" between policies underlying arbitration

18

agreements and the conduct of this bankruptcy proceeding such that "Congress intended

to override the Arbitration Act's general policy favoring enforcement of arbitration

agreements." *MBNA*, 436 F.3d at 108. Therefore, the standard in *U.S. Lines* has been

met and, even if the preference claims were subject to the arbitration clauses, the Court

would exercise its discretion to deny the motions to compel arbitration, even as to the

Coeclerici defendants.

## CONCLUSION

For the above stated reasons, the four motions to compel arbitration are **DENIED**.

Separate orders will be entered in each of these cases regulating further proceedings.

**IT IS SO ORDERED.**

DATED:      July 15, 2008

___/s/ Martin Glenn_____

MARTIN GLENN

UNITED STATES BANKRUPTCY JUDGE

19